UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARELIS VARGAS JIMENEZ,<br><br>Plaintiff,<br><br>v.<br><br>UNITED DEBT SETTLEMENT, LLC,<br><br>Defendant. | ECF CASE<br><br>No.: _____<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Arelis Vargas Jimenez hereby alleges through her attorneys, Lipsky Lowe LLP, as against Defendant United Debt Settlement, LLC, as follows:

## NATURE OF THE ACTION

1. Plaintiff asserts against her former employer, Defendant, claims of disability-based discrimination under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

## JURISDICTION, VENUE & ADMINISTRATIVE PROCEDURES

2. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, as (i) there is diversity of citizenship between Plaintiff, a resident of the State of Connecticut, and Defendant, a resident of the State of Connecticut, and (ii) this action involves a matter in controversy that exceeds the sum of $75,000, exclusive of interest and costs.

3. Based on publicly available information, the members of Defendant's LLC are Marcel Bluvstein and Gabriel Gorelik who reside in New York, making Defendant a resident of New York.

4. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2).

5. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

6. Plaintiff will be filing these claims in a Charge with the Equal Employment Opportunity Commission and will amend this Complaint once she is issued a Right to Sue Letter related to her Americans with Disabilities Act ("ADA") claim.

7. Following the commencement of this action, a copy of this Complaint will be served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

## THE PARTIES

8. Plaintiff is an adult individual residing in Connecticut.

9. Defendant is a domestic limited liability company that is organized under New York law and is authorized to do business in the State of New York. Defendant has registered the following address with the New York Department of State, Division of Corporations, to accept service on its behalf: 187 Wolf Road, Suite 101, Albany, New York 12205.

## STATEMENT OF FACTS

Background[1]

10. Defendant offers services such as debt settlement, debt consolidation, and other forms of debt relief.

11. Defendant employed Plaintiff as a Consumer Sales Agent, beginning in August 2022, and then as a Team Lead upon her promotion in July 2024.

12. Plaintiff worked for Defendant until she was unlawfully terminated, as explained herein, on October 29, 2025.

---

[1] Headings are included for organizational purposes only.

Plaintiff's Disability

13.     Throughout her employment with Defendant, and continuing to date, Plaintiff has suffered from scoliosis, L4-L5 disc protrusion, and right foraminal narrowing, which results in severe lower back and sciatic nerve pain that radiates down both legs.

14.     The pain becomes excruciating during flare-ups, lasting several days or even weeks despite regular medication.

15.     These flare-ups make it difficult to sit or stand for extended periods, requiring Plaintiff to alternate positions and rest periodically throughout the day.

16.     Plaintiff's back condition qualifies as a disability under the ADA, NYSHRL, and NYCHRL because it is a physical impairment that substantially limits multiple major life activities.

17.     Throughout Plaintiff's employment, Defendant was aware of Plaintiff's disability, the symptoms, and how it substantially limits multiple major life activities.

Plaintiff's Need for an Accommodation

18.     Throughout her employment, Plaintiff lived in Stamford, Connecticut, and Defendant's office is located in Midtown Manhattan, NY.

19.     Plaintiff's work hours were 9:00 a.m. to 6:00 p.m. (often later), and the commute by car or train could take up to two hours each way.

20.     The combination of the long commute and sitting at a desk for nine hours each day greatly aggravated Plaintiff's condition and increased her pain levels.

21.     Beginning in October 2022, Plaintiff began working under an accommodation for her disability that allowed her to work a hybrid schedule, with 2-3 days working from home.

22. The hybrid work arrangement helped Plaintiff manage her condition by avoiding prolonged sitting and driving, which directly worsened her symptoms. It also allowed her to stand and rest when needed, do her physical exercises to avoid flare-ups, take prescribed medication, and use heat or cold therapy to reduce inflammation. It also allowed her to maintain proper spinal alignment.

23. It was necessary for Plaintiff to manage pain and reduce the physical strain caused by extended sitting and traveling all while allowing her to work productively each day.

24. Plaintiff's hybrid work schedule accommodation did not pose any undue burden on Defendant's business.

25. Plaintiff continued to be a top performer for Defendant in terms of deals signed, clear rate, and other performance metrics, while working a hybrid work schedule.

Defendant Discriminated Against Plaintiff

26. In or around September 2023, Defendant hired a new Sales Manager, Narkis Dinavitser.

27. In or around January 2025, Dinavitser began enforcing new rules for Defendant's workplace, including requiring Plaintiff to be in office more often.

28. In January 2025, Dinavitser held a meeting with the Inside Sales department and stated that remote agents and remote Team Leads would be terminated and that hybrid work would no longer be allowed.

29. Dinavitser presented this as a new rule he was implementing, even though Defendant continued to have remote agents and supervisors before and after.

30. Under Dinavitser's new rules, Defendant forced Plaintiff to submit a disability accommodation form and medical documentation despite already allowing her to work some days remote, notwithstanding Dinavitser changing that arrangement.

31. On January 15, 2025, Plaintiff submitted the forms and medical documentation to Defendant.

32. On February 6, 2025, Plaintiff was approved for two remote work days.

33. On October 29, 2025, while Plaintiff was working from home under her approved hybrid schedule, Defendant deactivated her access to all work computer systems.

34. Plaintiff then received a phone call from Dinavitser and Human Resources employee, Esther Manashirova.

35. During the call, Plaintiff was informed that Defendant was terminating her employment effective immediately.

36. Specifically, Dinavitser told Plaintiff that "due to the fact that we're downsizing and the company has to make cuts, unfortunately, we're letting go of a few managers, not just you. You're a great agent, but this is a company decision. You're not the only one I have to call."

37. Plaintiff responded by explaining that this was the first time she had heard about any company downsizing and that he just promoted a new Team Lead earlier that same month, and the team she was assigned to earlier in the month was entirely new.

38. Plaintiff also asked why she would be included in the firing since she had proven over several years, and even during that month, that she is a high-performing, quality agent.

39. Plaintiff also asked if she was being fired because of her disability accommodation.

40. Dinavitser denied that Plaintiff's accommodation was a factor in Defendant's decision to fire her, and instead claimed it was due to her performance.

41. In response, Plaintiff again explained to them that this rationale made no sense given her excellent performance in ranking in the top 17 employees in deals signed per hour out of more than 50 agents that month and maintained one of the highest clear rates in the entire company.

42. Plaintiff also said that her team has consistently led the company with one of the highest collective clear rates, proving that they were generating revenue, not losses.

43. Dinavitser ignored Plaintiff's explanation and told her that she would receive a payout of all her pending commissions and an additional $4,000.

44. Dinavitser then abruptly ended the call, saying he had to contact other managers and Manashirova would follow up with Plaintiff via email regarding offboarding paperwork.

45. Later that day, Manashirova emailed Plaintiff a Separation Agreement to sign.

46. Plaintiff replied to Esther asking when she would receive her commissions and the estimated amount she should expect.

47. Esther informed Plaintiff that contrary to Dinavitser's prior explanation on their phone call, Plaintiff would receive only her remaining base pay upon leaving the company, but would have to sign the Separation Agreement to receive her outstanding commissions.

48. Since Plaintiff was entitled to her commissions regardless of whether she signed the Separation Agreement, and the Agreement involved waiving her rights to assert any legal claims against Defendant, Plaintiff refused to sign the Agreement.

49. No legitimate business reason exists for why Defendant fired Plaintiff.

50. Defendant's rationale for Plaintiff's termination that the company was downsizing and Plaintiff was performing poorly is pretextual and meant to conceal the discriminatory nature of its decision because Plaintiff consistently ranked among Defendant's best performing

employees and she and her team yielded a profit for Defendant each month.

51. Throughout her employment with Defendant, Plaintiff no disciplinary history, no prior warnings, and was never placed on a Performance Improvement Plan.

52. Throughout her employment with Defendant, Plaintiff consistently ranked among Defendant's top performers and maintained one of the highest clear rates in the entire company.

53. Defendant fired Plaintiff because of her disability and need for an accommodation based on Defendant's newly implemented policy of requiring more in-office work.

54. As a result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

FIRST CAUSE OF ACTION
DISABILITY DISCRIMINATION
UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

55. Plaintiff realleges every allegation of the preceding paragraphs as if fully set forth in this cause of action.

56. At all relevant times, Plaintiff was an "employee" and "person" under the NYSHRL.

57. At all relevant times, Defendant was an "employer" under the NYSHRL and employed Plaintiff.

58. Plaintiff's back condition constitutes a disability under the NYSHRL. N.Y. Exec. Law §§ 292(21)(a)-(c).

59. Defendant discriminated against Plaintiff because of her disability, violating the NYSHRL.

60. Defendant is vicariously liable for an actionable discriminatory environment created by its supervisors who had immediate or successively higher authority over Plaintiff.

61. As a result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

SECOND CAUSE OF ACTION
DISABILITY DISCRIMINATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

62. Plaintiff realleges every allegation of the preceding paragraphs as if fully set forth in this cause of action.

63. At all relevant times, Plaintiff was an "employee" and "person" under the NYCHRL.

64. At all relevant times, Defendant was an "employer" under the NYCHRL and employed Plaintiff.

65. Plaintiff's back condition constitutes a disability under the NYCHRL, N.Y.C. Admin. Code § 8-102(16).

66. Defendant discriminated against Plaintiff because of her disability, violating the NYCHRL.

67. Defendant is strictly liable for an actionable discriminatory environment created by its supervisors who had immediate or successively higher authority over Plaintiff.

68. As a result of Defendant's unlawful acts, Plaintiff can recover punitive damages against it. N.Y.C. Admin. Code § 8-502.

69. As a result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

1. Accepts jurisdiction over this matter.

2. Impanels and charges a jury with respect to the causes of action.

3. Awards Plaintiff the following damages against Defendant:

    a. An award of front pay, back pay, and all benefits;

    b. Damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, physical injury and emotional distress, and medical expenses in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination, harassment and retaliation are repulsive to legislative enactments in the amount of at least $1,000,000.00;

    c. An award of punitive damages;

    d. An award of pre-judgment and post-judgment interest;

    e. An award of costs and expenses of this action together with reasonable attorneys' and expert fees, if any; and

    f. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 21, 2026

                                LIPSKY LOWE LLP

                                s/  Douglas B. Lipsky
                                Douglas B. Lipsky
                                Frank J. Tantone
                                420 Lexington Avenue, Suite 1830
                                New York, New York 10170-1830

        212.392.4772
        doug@lipskylowe.com
        frank@lipskylowe.com
        *Attorneys for Plaintiff*